UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JASON MEVORAH,

        Petitioner,

    v.

WELLS FARGO HOME MORTGAGE, INC., a division of WELLS FARGO BANK, NATIONAL ASSOCIATION, and DOES 1 through 50, inclusive,

        Defendants.
_____/

No. C 05-1175 MHP

**MEMORANDUM & ORDER**
**Re: Motion to Correct**

    Plaintiff Jason Mevorah has brought the present action on behalf of all persons employed by defendant Wells Fargo Home Mortgage, Inc. as home mortgage consultants ("HMCs"), HMC trainees, and any similar positions responsible for originating home mortgage or personal loans to consumers within California from February 10, 2001 to the date of judgment after trial (the "class period"). Plaintiff alleges that defendant's characterization of HMCs as exempt from overtime is incorrect, and that he and other potential class members are entitled to overtime pay under the Fair Labor Standards Act ("FLSA") and California law. Now before the court is plaintiff's motion to correct alleged misrepresentations made by defendant. Having considered the parties' submissions and arguments, the court enters the following memorandum and order.

BACKGROUND

    This action was filed in the San Francisco Superior Court on February 10, 2005, and removed to this court by defendant on March 22, 2005. Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23; however, no motions regarding certification have been filed and a class has not been certified.[1] Plaintiff worked as a HMC for defendant, where he was paid on a

1  commission basis and classified as exempt from overtime. Joint CMS at 2. Plaintiff argues that he
2  and other potential class members—other HMCs, HMC trainees, and any similar positions
3  responsible for originating home mortgage or personal loans to consumers within California during
4  the class period—are not exempt from the overtime requirements under the FLSA and California
5  law. Id. Plaintiff seeks restitution for unpaid overtime wages, damages, and penalties, for himself
6  and for the potential class members. Id.

7  Plaintiff moves this court to issue a notice to all potential class members correcting certain
8  alleged misrepresentations that defendant has made to prospective class members. Plaintiff alleges
9  that defendant, through counsel, has contacted members of the potential class and has made false and
10 misleading statements regarding this action and its potential impact. Pl.'s Motion at 10. Plaintiff
11 further alleges that defendant has asked members of the potential class to sign declarations regarding
12 the nature of their duties as HMCs and their compensation preferences, and that these declarations as
13 drafted by defendant are inaccurate and omit critical facts. Id. In support of these allegations,
14 plaintiff submitted the declaration of Caroline Urso, a former HMC. See Urso Decl. Ms. Urso states
15 that in July 2005, while she was still employed by defendant, she was contacted by its counsel
16 regarding this action. Id. ¶ 3. She states that she was led to believe that if the action were successful
17 HMCs would no longer be paid by commission, but instead would be paid on an hourly basis. Based
18 on this representation, she states that she agreed to an interview to support the maintenance of her
19 position on a commission basis. Id. She was informed that the interview would serve as the basis
20 for a declaration. See Id. Ms. Urso further states that she was not informed by defendant's counsel
21 that if the action were successful she might be eligible to recover overtime pay, that her declaration
22 could be used against the interests of the potential class (including herself), that declining to be
23 interviewed would not impact her job, or that she should seek the advice of counsel. Id. ¶ 4. A few
24 days after her conversation with counsel, Ms. Urso received a draft declaration which she declined to
25 sign because she "felt that [counsel] had manipulated my words by leaving out significant statements
26 and using only the words that benefitted his argument" and that it was not "the complete truth." Id. ¶
27 6.
28

Defendant filed its opposition to plaintiff's motion on October 17, 2005. Defendant admits that it contacted HMCs including Ms. Urso, but asserts that it did so as part of its own internal discovery to collect information about how the HMCs perform their jobs. Def.'s Opp. at 1, 6. Defendant asserts that it engaged in no misconduct in interviewing the HMCs. Id. at 11. Defendant maintains that it made no untrue statements about the potential impact of this action; its counsel did not tell Ms. Urso that the action sought to change the position from commissioned to hourly pay, but rather that it sought to change the position "to become eligible for overtime rather than the present exempt commission-based structure." Id. at 8. Defendant also states that the draft declaration prepared for Ms. Urso represented a fair and accurate representation of what she told counsel during their telephone interview. Id. In support of these assertions, defendant filed the declaration of Michael P. Wallock, an attorney who interviewed Ms. Urso and other HMCs. See Wallock Decl. Mr. Wallock attests to the above, and additionally states that he informed Ms. Urso that she was under no obligation to be interviewed by defendant's attorneys, and that there would be no reprisals should she decline. Id. ¶ 3. Mr. Wallock also states that he emphasized, both in his conversation with Ms. Urso and in the cover memo accompanying the draft declaration he sent to Ms. Urso, that she should review the declaration for accuracy before signing it, and contact him to make any corrections. Id. ¶ 4. He further states that "when an interviewee has asked to make changes or corrections to his or her declaration, we have always made them." Id. ¶ 4.

On October 24, 2005 plaintiff replied to defendant's opposition, arguing that by obtaining declarations, which may be used as evidence in court, defendant has done far more than engage in internal discovery. Pl.'s Reply at 1. Plaintiff also raises two new arguments in its reply. First, plaintiff claims that defendant has violated Federal Rule of Civil Procedure 26 by failing to reveal the existence of any declarations in its disclosures.[2] Id. Second, plaintiff claims that defendant has violated California Rule of Professional Conduct 3-600 by failing to reveal to the HMCs it contacts, who are all potential class members, that "the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing" and that any information communicated to defendant may be "used in the organization's interest" if defendant "becomes

3

1  adverse to the constituent." Cal. R. Prof. Conduct 3-600; see Pl.'s Reply at 1. On October 28, 2005,
2  defendant filed a motion for leave to file a sur-reply. The court requested that defendant address
3  Rule 26 and Rule of Professional Conduct 3-600 at oral argument, which took place on November 9,
4  2005.

5      Plaintiff argues that the court should issue a notice to all potential class members advising
6  them of several things: (1) that a class action has been filed seeking overtime compensation for
7  HMCs; (2) that the dispute between plaintiff and defendant centers on whether HMCs are "inside"
8  sales employees entitled to overtime payment or "outside" sales employees exempt from overtime
9  requirements; (3) that if plaintiff prevails, defendant can continue to pay its HMCs on a commission
10 basis, but will be additionally required to make overtime payments; (4) that if plaintiff prevails,
11 members of the class will be awarded back overtime pay; (5) that all potential class members have to
12 right to speak, or to refuse to speak, to anyone, including defendant or its counsel, without fear of
13 reprisal; (6) that if potential class members should choose to speak with defendant or its counsel,
14 they have the right to refuse to sign any written statement, but if they do sign they should be sure it is
15 complete and accurate; (7) that potential class members have the right to seek their own counsel; and
16 (8) that potential class members may, but are not required to, contact plaintiff's counsel. Pl.'s
17 Motion at 16–17, 19. Defendant, in opposition, argues that plaintiff's motion for a corrective notice
18 should be denied because defendant's actions were proper under law. Def.'s Opp. at 9. The
19 appropriate action, according to defendant, would be for plaintiff to depose the declarants of any
20 declarations defendant should later submit to the court. Id.

21

22 LEGAL STANDARD
23     The United States Supreme Court has observed that

> [c]lass actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules.

4

1  Gulf Oil Co. v. Bernard, 452 U.S. 89, 99–100  (1981).  The foundation for the court's duty and broad
2  authority is found in Rule 23(d) of the Federal Rules of Civil Procedure, which  provides, as relevant
3  to the instant action, that the court may make appropriate orders "requiring, for the protection of the
4  members of the class or otherwise for the fair conduct of the action, that notice be given . . . to some
5  or all of the members of any step in the action," and "imposing conditions on the representative
6  parties."  Fed. R. Civ. Pro. 23(d).

DISCUSSION

The motions currently before the court concern pre-certification communications by defendant to potential class members.  Pre-certification communications to potential class members by both parties are generally permitted, and also considered to constitute constitutionally protected speech.  See e.g. Gulf Oil Co., 452 U.S. at 101; Parks v. Eastwood Ins. Services, Inc., 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002); Atari, Inc. v. Superior Court of Santa Clara County, 166 Cal. App. 3d 867, 871 (1985).  As such, any limitations on pre-certification communications between parties and potential class members should be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  Gulf Oil Co., 452 U.S. at 101.

Courts have limited pre-certification communications with potential class members after misleading, coercive, or improper communications were made.  See Parks, 235 F. Supp. 2d at 1084; Belt v. Emcare Inc., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003).  For example, this court has restricted a defendant's ability to communicate with potential class members following the defendant's publication of a notice that, in relevant part, failed to disclose the pendency or scope of the class action and may have caused confusion among potential class members regarding their rights.  See Pollar v. Judson Steel Corp., Civil No. 82-6833 MHP, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984) (Patel, J.).  Likewise, a district court in Texas has restricted a defendant's ability to communicate with potential class members where defendant sent a letter to potential class members that the court determined had "mischaracterized the suit [seeking overtime wages for nurse

5

practitioners and physician's assistants] as an attack on the absent class members' status as 'professionals' in the workplace," mischaracterized the damages, and was coercive because "the absent class member and the defendant are involved in an ongoing business relationship . . . as employer-employee." See Belt, 299 F. Supp. 2d at 668.

In the instant case, defendant, through its counsel, has contacted by telephone an unknown number of its employee HMCs who are potential class members. Defendant told these HMCs that the telephone calls were in connection with this action, which defendant described as seeking to have "HMC positions changed to become eligible for overtime rather than the present exempt commission-based structure," with the possible effects including "a system of time-monitoring, payment of overtime, as well as some lunch period regulation." Wallock Decl. ¶ 5. For the HMCs who agreed to be interviewed, defendant has conducted telephone interviews and prepared declarations for the HMCs to sign. See id. ¶¶ 3–4.

These circumstances are not unlike those in the Belt case, where the court found the defendant's statements to improperly characterize the lawsuit "as an attack on the absent class members' status as 'professionals' in the workplace." See Belt, 299 F. Supp. 2d at 667 n.4, 668. Here, defendant's verbal explanation of this action as seeking to have "HMC positions changed to become eligible for overtime rather than the present exempt commission-based structure" with the possible effects including "a system of time-monitoring, payment of overtime, as well as some lunch period regulation" (see Wallock Decl. at ¶ 5) could easily give a potential class member the mistaken impression that "if the lawsuit were successful, [HMC positions] would be paid on an hourly basis instead of by commission." Urso Decl. at ¶ 3. Indeed, that is precisely the impression Ms. Urso states she was given. See id. The court therefore finds that defendant's statements to potential class members were misleading.

Defendant's statements also have a "heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive." Belt, 299 F. Supp. 2d at 668. Ms. Urso states that if she had not already been looking for another job she "would have felt

1  forced to sign the declaration in order to continue her employment" with defendant. Defendant
2  states that it told Ms. Urso and other HMCs it interviewed that they would "neither receive any
3  benefit from participating in the interview nor receive any detriment by not participating." Def.'s
4  Opp. at 7. Accepting defendant's version of the facts, it is still reasonable to assume that an
5  employee would feel a strong obligation to cooperate with his or her employer in defending against a
6  lawsuit.

7  Closely related to this problem is the conflict that a corporation's attorney must address when
8  speaking to an unrepresented employee. California Rule of Professional Conduct 3-600 provides
9  that an attorney representing an organization shall, in dealing with that organization's employees,
10 "explain the identity of the client for whom the member acts, whenever it is or becomes apparent that
11 the organization's interests are or may become adverse to those of the constituent(s) with whom the
12 member is dealing." Cal. R. Prof. Conduct 3-600(D). The rule further provides that the attorney
13 shall not "mislead such a constituent into believing that the constituent may communicate
14 confidential information to the member in a way that will not be used in the organization's interest if
15 [the organization] is or becomes adverse to the constituent." Id.

16 When engaging in precertification communications, as is equally true with any
17 communication, a member of the State Bar of California must comply with the requirements of the
18 Rules of Professional Conduct. See Parris v. Superior Court of Los Angeles County, 109 Cal. App.
19 4th 285, 298 n.6 (2003) (observing that counsel for plaintiff must abide by rule 1-400's prohibitions
20 on false, misleading and deceptive messages in pre-certification communications with prospective
21 clients). It does not appear from the record currently before this court that defendant properly
22 explained to the HMCs it contacted that "the organization's interests are or may become adverse to
23 those of the constituent(s) with whom the member is dealing" and that any information
24 communicated to defendant may be "used in the organization's interest" if defendant "becomes
25 adverse to the constituent." Cal. R. Prof. Conduct 3-600. Thus the court finds that defendant's pre-
26 certification communications were misleading in at least one instance and, if this one employee was
27 misled, it is reasonable to assume that other employees, who attorney Wallock acknowledges were
28

7

similarly questioned, may have been misled. Moreover, this is a case that goes further than the employer disseminating information to its employees; it also involves the solicitation of signed declarations, thus committing employees who are potential class members to a set of facts that may be adverse to their interest and without their having been fully informed of all aspects of the case.[3] The opportunity for mischief is compounded by the relationship between the employer and the employee and the coerciveness an employee may feel. Employers and their attorneys need to be cautious about placing themselves in an untenable position.

Having determined that defendant's pre-certification communications with potential class members were misleading and improper, the court turns to the question of formulating an appropriate response. Plaintiff has asked the court to issue a corrective notice to all potential class members, but has explicitly declined to request that the court restrain defendant from further pre-certification contact with potential class members. See Pl.'s Motion at 16. Defendant believes that the appropriate response would be for plaintiff to depose the authors of any declarations defendant should later submit to the court. See Def.'s Opp. at 9.

In the interests of correcting any inaccurate impression left by defendant's misleading and improper pre-certification communications with potential class members, and of forestalling any future problems, the court finds and orders the following:

1. Neither party, including the parties' counsel, may engage in any further pre-certification communications regarding this action with any potential class member unless pre-approved by this court. Communication undertaken in the regular course of business is excepted from this restriction. However, any communications touching upon matters involved in this litigation are impermissible absent a court order.

2. Defendant shall provide to plaintiff a complete list of all potential class members already contacted for interviews, regardless of whether the individual consented to an interview or provided a signed declaration. Plaintiff may depose each of these individuals for the limited purpose of determining the content of each individual's conversation with counsel for defendant and resulting declaration, if any.

3.  The parties shall meet and confer and draft a notice to be distributed to potential class members which shall contain a brief summary of plaintiff's claims, defendant's defenses, and the potential outcome of the suit should plaintiff prevail. Within twenty (20) days of the date of this order the parties shall submit the proposed notice to the court for approval. Defendant shall bear the costs of distribution of the notice.

4.  The parties also shall meet and confer about the preparation and distribution of a questionnaire designed to elicit facts about each individual's employment with defendant, including but not limited to dates of employment, job functions, hours worked, time spent on particular tasks, and manner of compensation. The parties shall reach agreement on the questionnaire if at all reasonably possible and submit it to the court for approval within forty-five (45) days of the date of this order. Defendant shall bear the costs of distribution of the questionnaire.

CONCLUSION

For the reasons stated above, the court DENIES plaintiff's motion to correct, but ORDERS the parties to comply with the foregoing on or before the dates ordered.

IT IS SO ORDERED

Date: November 17, 2005

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

ENDNOTES

1. The class certification hearing is currently set for April 24, 2006. Defendant has asserted that if class certification is appropriate, it should be under section 216(b) of the Fair Labor Standards Act ("FLSA") rather than under Federal Rule of Civil Procedure 23. The court does not find it necessary to distinguish between certification of an "opt-out" class under Rule 23 and an "opt-in" class under section 216(b) to decide the instant motion.

2. The court will not address plaintiff's argument that defendant's failure to disclose the declarations under Federal Rule of Civil Procedure 26 precludes their use "at trial, at a hearing, or on a motion" under Federal Rule of Civil Procedure 37. It is prematurely raised.

3. It is questionable whether the soliciting and preparation of declarations is within the ambit of constitutionally protected speech, since this goes beyond the dissemination of information or mere communication.